MARK E. ELLIOTT (SBN 157759)
mark.elliott@pillsburylaw.com
MICHAEL S. McDONOUGH (SBN 193684)
michael.mcdonough@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Attorneys for Defendant
CERTAINTEED LLC

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION OF IRRITATED RESIDENTS, SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER, CENTRAL VALLEY SAFE ENVIRONMENT NETWORK, PROTECT OUR WATER, <br><br>                Plaintiffs, <br><br>    v. <br><br> CERTAINTEED LLC, <br><br>                Defendant. | CASE NO. 1:20-CV-01064-JLT-SKO <br><br> **JOINT AMENDED NOTICE OF SETTLEMENT** <br><br><br> Complaint Filed:  July 31, 2020 |

PLEASE TAKE NOTICE, pursuant to Local Rule 160, Plaintiffs Association of Irritated Residents ("AIR"), San Joaquin Raptor/Wildlife Rescue Center ("SJR/WRC"), Central Valley Safe Environment Network ("CVSEN"), and Protect Our Water ("POW") (collectively, "Plaintiffs") and Defendant CertainTeed, LLC ("CertainTeed") (collectively, the "Parties"), jointly notify the Court that the Parties have entered into a settlement in this matter. During the settlement conference before Magistrate Judge Oberto on February 3, 2022, the Parties agreed on the material terms of settlement, which were stated on the record. Following the settlement conference, the Parties have timely finalized the settlement agreement in this matter, attached hereto as **Exhibit A**. This settlement agreement provides for a forty-five (45) calendar day review period, consistent with 42 U.S.C. § 7604(c)(3), which will commence on the date that the settlement agreement is received by the United States Department of Justice and the EPA (collectively, the "Federal Agencies").

Following expiration of the Federal Agencies' 45-day review period and execution of the settlement agreement by both parties, the Stipulation to Dismiss Action with Prejudice and Proposed Order, which shall include a copy of this Settlement Agreement, shall be filed with and may be entered by the Court.

Respectfully submitted,

Dated:  February 25, 2022

PILLSBURY WINTHROP SHAW PITTMAN LLP
MARK E. ELLIOTT
MICHAEL S. MCDONOUGH

By:  _/s/ Mark E. Elliott_____
Mark E. Elliott
*Attorneys for Defendant*
CERTAINTEED LLC

-2-

1

Dated:  February 25, 2022

AQUA TERRA AERIS LAW GROUP
MATTHEW C. MACLEAR
ERICA A. MAHARG

By:   */s/ Erica A. Maharg*
   Erica A. Maharg
*Attorneys for Plaintiffs*
ASSOCIATION OF IRRITATED
RESIDENTS, SAN JOAQUIN
RAPTOR/WILDLIFE RESCUE
CENTER, CENTRAL VALLEY SAFE
ENVIRONMENT NETWORK,
PROTECT OUR WATER

-3-

# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Confidential Settlement and Release Agreement (the "Agreement") is made and entered into as of the Effective Date (defined below), by and among Association of Irritated Residents ("AIR"), San Joaquin Raptor/Wildlife Rescue Center ("SJR/WRC"), Central Valley Safe Environment Network ("CVSEN"), and Protect Our Water ("POW"), their respective present and future directors, officers, employees, agents, attorneys, representatives, principals, successors, affiliates, parents, subsidiaries and assigns (collectively, "Plaintiffs"), and CertainTeed, LLC, its respective past, present, and future directors, officers, shareholders, employees, agents, attorneys, representatives, principals, predecessors, successors, affiliates, parents, subsidiaries and assigns (collectively "CertainTeed").  Plaintiffs and CertainTeed are collectively referred to herein as the "Parties", each a "Party."

## RECITALS

**WHEREAS,** AIR is a California non-profit corporation incorporated in 2012. AIR's mission is to combat the pollution of the air and waters of the San Joaquin Valley of the State of California by raising awareness of sources of pollution, advocating for regulatory oversight, and litigating against polluters in violation of state and federal environmental laws.

**WHEREAS,** SJR/WRC is a California non-profit corporation and Plaintiffs CVSEN and POW are non-profit associations sponsored by SJR/WRC. SJR/WRC, CVSEN and POW's organizational purposes are protecting and preserving wildlife habitats and the environment, including combating pollution of the air and waterways in the San Joaquin Valley.

**WHEREAS**, CertainTeed operates a fiberglass manufacturing facility, located at 17775 Ave. 23 1/2, Chowchilla, California, 93610 (the "Facility").

**WHEREAS**, the Facility operates under a permit issued by the San Joaquin Valley Air Pollution Control District ("Air District") pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f ("Title V Permit").

**WHEREAS**, on May 18, 2020, Plaintiffs issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, and the Facility's branch manager, as well as the

Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Officer of the California Air Resources Board ("CARB"), the Governor of California, and the Regional Administrator of EPA Region IX, for violations of the Clean Air Act, 42 U.S.C. § 7401 et seq. (the "Act") and the Title V Permit occurring at the Facility;

**WHEREAS**, on July 31, 2020, Plaintiffs filed a complaint against CertainTeed in the Eastern District of California. ECF No. 1 ("Complaint"), and instituted the action *Association of Irritated Residents, et al. v. CertainTeed, LLC*, Case No. 1:20-cv-1064-NONE-SKO (the "Action");

**WHEREAS**, the Complaint alleges that Defendant violated and is violating the Title V Permit, Air District rules, and the Act, at the Facility;

**WHEREAS**, Plaintiffs and Defendant (collectively "Parties") agree that it is in their mutual interest to enter into a Settlement Agreement setting forth terms and conditions appropriate to resolve the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

**WHEREAS**, all actions taken by CertainTeed pursuant to this Settlement Agreement shall be made in compliance with all applicable federal, state, and local rules and regulations.

**WHEREAS**, the Parties deny all liability with respect to one another in the Action;

**WHEREAS**, the Parties agree that this Agreement is a compromise of disputed claims and that the settlement terms are not to be construed as an admission of liability on the part of any of the Parties; and

**WHEREAS**, the Parties now desire to settle and compromise their dispute in order to fully and finally settle the claims that are the subject of the Complaint and to avoid the risk, expense, and uncertainty of further litigation.

**NOW, THEREFORE**, in consideration of the above recitals, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

### I.   Objectives.

It is the express purpose of the Parties through this Settlement Agreement to further the objectives of the Clean Air Act and to resolve all issues alleged by Plaintiffs in their 60-Day Notice and Complaint.

In light of these objectives and as set forth fully below, the Parties agree to the following provisions of this Settlement Agreement.

### II.   Agency Review

1.   <u>Agency Review</u>. Plaintiffs shall submit this Settlement Agreement to the United States Department of Justice and the EPA (collectively, the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 42 U.S.C. § 7604(c)(3). The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies, if necessary. If the Parties do not agree to a revision to the Settlement Agreement to respond to the issue(s) raised by the Federal Agencies within twenty (20) business days, then the Settlement Agreement shall be submitted to the Court without such revision, and the Parties shall inform the Court of the issue(s) raised by the Federal Agencies and the Parties' decision not to modify the Settlement Agreement in response to such issue(s).

2.   <u>Filing of Dismissal</u>.  Following expiration of the Federal Agencies' 45-day review period and execution of the Settlement Agreement by both parties, the Stipulation to Dismiss Action with Prejudice and Proposed Order, which shall include a copy of this Settlement Agreement, shall be filed with and may be entered by the Court.

### III.   Settlement Agreement Term.

1.   <u>Effective Date and Agency Review Expiration Date</u>. The Effective Date of this Settlement Agreement shall be the date of full execution by both parties, and the "Agency

Review Expiration Date" shall be defined as the date of expiration of the Federal Agencies' review period provided for in Section II above. All obligations under this Settlement Agreement shall begin on the Effective Date, except as otherwise stated in this Settlement Agreement.

2.     <u>Termination Date</u>. This Settlement Agreement shall terminate forty-five (45) days after Defendant submits the Completion Report, as required by Section IV, subsection G, paragraph (2).  However, if one of the Parties has invoked Dispute Resolution in accordance with Section V of this Settlement Agreement, and such Dispute Resolution has not yet concluded when the Settlement Agreement would otherwise terminate, then the Dispute Resolution process shall continue and the Settlement Agreement shall not terminate until (i) the party invoking Dispute Resolution chooses to discontinue the Dispute Resolution process; or (ii) written notice is provided by the Party that invoked Dispute Resolution that the dispute has been fully resolved, which shall be issued promptly by such Party upon the resolution of the dispute. With respect to those improvements laid out in Section IV, Air District determinations are deemed conclusive in establishing the permitting requirements for the improvements and compliance of these improvements as designed, constructed and installed under applicable laws, regulations, and Air District Rules, insofar as Plaintiffs may not dispute or challenge those determinations as part of enforcing this Agreement.  The Parties shall jointly file a notice with the Court confirming that the conditions of the Settlement Agreement have been met.

## IV.   **Commitments of the Parties**

### A.   **Replacement Stack**

1.     No later than July 1, 2022, Defendant shall fully replace the existing stack at the Facility with a new stainless-steel stack.

### B.   **Continuous Emissions Monitoring Systems Improvements**

1.     No later than July 1, 2022, Defendant shall complete the following improvements to the continuous emissions monitoring systems ("CEMS"), including continuous opacity monitory systems, at the Facility:

a.    Construct a new CEMS walk-in shelter at the base of the stack to replace the existing CEMS shelter;

b.    Replace and upgrade the flow monitor to a Sick FLOWSIC 100 PH Ultrasonic;

c.    Replace and upgrade the NH3/H2O (ammonia/water) analyzers and optics to a DPSO (Dual Pass Optics) set);

d.    Upgrade the Data Acquisition and Handling System ("DAHS") for the CEMS with a Cemtek/KVB-Enertec NetDAHS for USEPA 40 C.F.R. part 60 and compliance with reporting to the San Joaquin Valley Air Pollution Control District. The following components will be replaced and/or upgraded: a Cemtek/KVB-Enertec SEAL controller, electrical, LED Monitors MOXA protocol converters, a SEAL Barcode Cylinder Scanner for Management of Calibration of Gas Cylinders, and a calibration gas manifold with solenoid valves for daily calibration. The DAHS shall be programmed with respect to indicating exceedances of emissions limits in accordance with the following parameters:

i.    The DAHS to only report emissions as dark or darker than Ringelmann #1 or equivalent to 20% opacity and greater if occurring for a period or periods aggregating more than three minutes in any one hour as an opacity exceedance.

ii.    The DAHS to not report any regularly-scheduled calibration checks or calibration checks conducted to confirm the emissions levels or as a result of planned maintenance activities as an exceedance.

**C.**    **C-1 Furnace McGill AirClean 4-300 Dry Electrostatic Precipitator**

1.    No later than July 1, 2022, Defendant shall complete the following improvements to the C-1 Furnace McGill AirClean 4-300 dry electrostatic precipitator ("DESP") at the Facility:

a.    Repair/replacement of the electrostatic precipitator inlet and outlet transitions and replacement of all plate pack assemblies;

    b.  Replacements and upgrades for the DESP electrical equipment (and control system; and

    c.  Full replacements of the rapping box air cylinders and purge air inlet elbows, the bottom half of each hopper, key parts for the EP hopper screw conveyors, all transformer/rectifiers ("T/Rs") and the key interlock system.

  **D.**  **Wet Electrostatic Precipitator**

    1.  No later than July 1, 2022, Defendant shall complete the following rebuild improvements to the C-11 South, MikroPul, Wet Electrostatic Precipitator ("WESP") at the Facility:

    a.  Clean preconditioning chamber, drain pipe, headers, and duct from chamber to ESP;

    b.  Replace all collecting and discharge electrodes A36 steel in each field;

    c.  Replace all hanger rods in each field;

    d.  Replace wash headers and spray nozzles, as well as washer header casing penetrations;

    e.  Replace all Support Insulators in each field; and

    f.  Reuse but maintain upper high voltage support frame equipment.

  **E.**  **C-12 Scrubbers**

    1.  No later than July 1, 2022, Defendant shall demolish the three existing mild stainless steel C12 Scrubbers and install three new stainless steel C12 scrubbers and associated ducting to replace the existing units. This work will include demolishment and replacement of existing piers, leg and ductwork as well as installation of the associated wash water header, three new stainless steel exhaust spool pieces, and platforms to access nozzle assembly and access door.

  **F.**  **Extension of Deadlines**

    1.  If CertainTeed is unable to meet the deadline in Section IV, Subsections A-E, CertainTeed shall notify Plaintiffs in writing at least ten (10) business days before the deadline,

stating the reason for the delay and indicating the new deadline. Plaintiffs may request additional information or a telephonic conference to discuss the extension of the deadline. Plaintiffs retain the right to dispute any extension pursuant to this agreement's Dispute Resolution provisions. Plaintiffs shall not dispute or withhold a reasonable extension, including delays resulting from a failure of a contractor or other third party wholly out of CertainTeed's control.

G. **Compliance Monitoring and Reporting**

1.     No later than July 11, 2022, CertainTeed shall notify Plaintiffs that all of the improvements in Section IV, subsections A-E, have been completed or not. This notification shall also state whether the Facility is operating (and if not, when it will be operational), and if and when the Facility expects to receive a revised Title V Permit if reasonably known at that time.

2.     No later than ten (10) days after the Facility has conducted all source tests and received a revised Title V Permit, Defendant shall produce and submit to Plaintiffs a document certifying completion of the projects required by Section IV, subsections A-E, and attaching the results of the source tests conducted and the revised Title V Permit (collectively referred to as the "Completion Report").

3.     At any time prior to termination, Plaintiffs, at its sole cost and expense, may conduct one site inspection ("Site Inspection"), for the purpose of ensuring compliance with this Settlement Agreement. In the event of a dispute regarding CertainTeed's compliance with this Settlement Agreement and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Settlement Agreement at Plaintiffs' request. Plaintiff shall not unreasonably request, and CertainTeed shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours.  Plaintiffs will provide CertainTeed with five (5) business days' notice to conduct a Site Inspection (weekends and holidays excluded from the calculation of the notice period).  Notice shall be provided by telephone and electronic mail and shall state the names of all persons that Plaintiffs will bring to the inspection.  Plaintiffs shall make every

reasonable effort to ensure that its inspections are scheduled in such a manner as to allow CertainTeed's facility manager and/or compliance officer to be present at all inspections.

        4.    <u>Document Provision</u>. During the term of this Settlement Agreement, CertainTeed shall notify and submit documents to Plaintiffs as follows:

        a.    CertainTeed shall provide Plaintiffs a copy of all deviation or breakdown reports, all communications with the Air District related to the improvements described in Section IV, subsections A-E, and all permit applications, if any, and all applications for renewals or amendments to the Title V Permit that are submitted to the Air District.

        b.    Any notices of violation or written communications received by CertainTeed from the Air District shall be sent to Plaintiffs within ten (10) business days of receipt by CertainTeed.

        5.    <u>Compliance Monitoring.</u> CertainTeed agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree in the amount of five thousand dollars ($5,000). The payment shall be made payable to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609, to be held in trust for Plaintiffs, within thirty (30) days of the Agency Review Expiration Date.

    **H.**    **<u>Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest</u>**

        1.    <u>Environmental Mitigation Project</u>: Defendant agrees to make a payment of $72,500.00, to the organizations and for the purposes identified in subparagraphs (a) and (b). The payment shall be made within thirty (30) days of the Agency Review Expiration Date, and Defendant shall provide Plaintiffs with a proof of such payment. The environmental mitigation payment shall be split between the following organizations as provided immediately below:

        a.    $36,250.00 shall be paid to the Rose Foundation for Communities and the Environment, 201 4th St., Apt. 102, Oakland, CA 94607, for projects aimed at reducing air pollution and the impact of air pollution in the San Joaquin Valley.

b. $36,250.00 shall be paid to the San Joaquin Parkway and Conservation Trust, 11605 Old Friant Road, Fresno, CA 93730, for projects aimed at rehabilitating or providing habitat for wildlife in the San Joaquin Valley.

2. <u>Fees and Costs</u>: Defendant agrees to pay a total of $157,500.00 to Plaintiffs in full satisfaction of Plaintiffs' investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter. The payment in full shall be made within thirty (30) days of the Agency Review Expiration Date and delivered by overnight delivery and made payable to Aqua Terra Aeris Law Group LLP, 4030 Martin Luther King, Jr. Way, Oakland, CA 94609, to be held in trust for Plaintiffs.

## V. <u>Dispute Resolution</u>

1. <u>Court Retains Jurisdiction for Enforcement of Agreement</u>. This Court shall retain jurisdiction over this matter for the term of this Settlement Agreement for the purposes of enforcing its terms and conditions and adjudicating all disputes among the Parties that may arise under the provisions of this Settlement Agreement. The Court shall have the power to enforce this Settlement Agreement with all available legal and equitable remedies, including contempt.

2. <u>Meet and Confer</u>. Either Party may invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice to attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the meet and confer.

3. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 2, above, the Party asserting a violation of the Settlement Agreement may file a motion to enforce the terms of the Settlement Agreement with the District Court.

**VI.     Mutual Release of Liability and Covenant Not to Sue**

1.       <u>Plaintiffs Release</u>. In consideration of the above, upon the Effective Date of this Settlement Agreement,  Plaintiffs on its own behalf and on behalf of its respective officers, directors, employees, predecessors, successors, assigns, agents, and attorneys, and other representatives, releases CertainTeed and each of its officers, directors, employees, shareholders, parents, affiliates, subsidiaries, agents, attorneys, consultants, representatives, predecessors, successors, and assigns, and each of their officers, directors, employees, shareholders, parents, affiliates, subsidiaries, agents, attorneys, consultants, and other representatives, past and present, from, and waives, any and all claims alleged in the Notice Letter and/or Complaint, including a release for any claims arising out of the present set of facts known to the parties and/or previously disclosed to the Air District in a publicly-available communication dated prior to the Effective Date, including all claims for declaratory relief, injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claimed.

2.       <u>Defendant's Release</u>.  In consideration of the above, upon the Effective Date of this Settlement Agreement, CertainTeed, on its own behalf and on behalf of its officers, directors, employees, agents, attorneys, consultants, representatives, parents, subsidiaries, predecessors, successors and assigns, and their agents, attorneys, and other representatives, releases Plaintiffs (and its officers, directors, employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives, any and all claims which relate to the allegations in the Notice Letter and/or the Complaint, including a release for any claims arising out of the present set of facts known to the parties (i.e., disclosed to the agency prior to the Effective Date and publicly available), including all claims for declaratory relief, injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claim, whether or not alleged in the Answer, known or unknown.

3.      <u>Covenant Not to Sue</u>.  The Parties hereby agree not to institute or prosecute any action, suit, hearing or other proceeding of any kind, nature or character, at law or in equity against the other, arising out of or in any way connected to the Action, except for enforcement of this Settlement Agreement.

4.      <u>Dismissal</u>. Pursuant to the Court's retention of jurisdiction over this matter, as requested by the Parties in Section V, Paragraph 1, the Parties shall stipulate and request that the Court dismiss the Complaint with prejudice, except that the Court retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Parties with the terms of Settlement Agreement until the Settlement Agreement terminates. The Parties shall submit the stipulated request to the Court no later than ten (10) days after the full execution of the Settlement Agreement.

## VII.   <u>Miscellaneous Provisions</u>

1.      <u>No Admission of Liability</u>. The Parties enter into this Settlement Agreement for the purpose of avoiding prolonged and costly litigation.  Neither the Settlement Agreement nor any payment pursuant to the Settlement Agreement shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation.  CertainTeed does not admit liability to and reserves its right to assert that the majority of the alleged claims are not violations because CertainTeed alleges (but Plaintiffs dispute) there was no violation of an applicable legal standard and/or there is a recognized defense to the claim.

2.      <u>Counterparts</u>.  This Settlement Agreement may be executed in any number of counterparts, all of which together shall constitute one original document.  E-mail of a PDF or scanned original signature, and/or facsimile copies of original signature, shall be deemed to be originally executed counterparts of this Settlement Agreement.

3.      <u>Authority</u>.  The undersigned representatives for Plaintiffs and Defendant each certify that they are fully authorized by the Party whom they represent to enter into this Settlement Agreement. A Party's signature to this Settlement Agreement transmitted by facsimile or electronic mail shall be deemed binding.

4.      <u>Construction</u>.  The language in all parts of this Settlement Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Title V Permit, the Act, or specifically herein. The captions and paragraph headings used in this Settlement Agreement are for reference only and shall not affect the construction of this Settlement Agreement.

5.      <u>Full Settlement</u>.  This Settlement Agreement constitutes a full and final settlement of this matter.

6.      <u>Integration Clause</u>.  This is an integrated Settlement Agreement. This Settlement Agreement is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Settlement Agreement.

7.      <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Settlement Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

8.      <u>Negotiated Settlement</u>. The Parties have negotiated this Settlement Agreement and agree that it shall not be construed against the Party preparing it. The Settlement Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty and ambiguity shall not be interpreted against any one Party.

9.      <u>Modification of the Settlement Agreement</u>.  This Settlement Agreement, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court.

10.     <u>Assignment</u>. Subject only to the express restrictions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiffs within ten (10) days of any assignment.

11.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Settlement Agreement when performance is prevented or delayed due to a Force Majeure Event.

a.      For purposes of this Settlement Agreement, a "Force Majeure Event" is any circumstance beyond the control of a Party, their contractors, or any entity controlled by the Party, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, industrial accidents not caused by CertainTeed's, its employees', or representatives' negligence, pandemic, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency through no fault or delay of CertainTeed, its employees, or representatives; or any suspension of glass manufacturing operations, unrelated, in whole or in part, to the foregoing factors, that is expected to, intended to, or does, last for more than three (3) months.  A Force Majeure Event shall not include normal inclement weather, economic hardship, or inability to pay.

b.      Defendant shall provide notice to Plaintiffs by electronic or written transmission as soon as practicable, but not later than five (5) business days after the time Defendant first knew, or by the exercise of due diligence, should have known, that a claimed Force Majeure Event would affect Defendant's ability to comply with this Settlement Agreement. The notice shall describe the event and the length of any extension sought.

c.      Unless Plaintiffs have invoked Dispute Resolution related to the claimed Force Majeure Event, as defined by this paragraph, the time for Defendant to perform the affected requirements shall be extended for the time necessary to complete those obligations, provided, however, that no Force Majeure Event shall extend the time period for the payments due under Section IV, subsection G, paragraphs 1-2.   Failures resulting from a Force Majeure Event shall not be considered a breach of this Settlement Agreement, and Defendant shall not be liable for any stipulated penalties occurring as a direct result of the Force Majeure Event, provided Defendant complies with the terms of this paragraph.   However, the term of this Settlement

Agreement shall be extended by the time period for which compliance with this Settlement Agreement is excused due to a Force Majeure Event.

               d.     If Plaintiffs object to Defendant's assertion that a Force Majeure Event, as defined by this paragraph, has occurred or does not agree to the length of the extension of time sought by Defendant, then Plaintiff may invoke Dispute Resolution under Section V of this Settlement Agreement. In any such dispute, Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a Force Majeure Event, that Defendant gave the notice required by this paragraph, that the Force Majeure Event caused any failure to comply or delay in compliance with an obligation of this Settlement Agreement that Defendant claims was attributable to that event, and that Defendant exercised reasonable efforts to prevent or minimize any failure or delay in compliance caused by the event.

               12.    <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Settlement Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

<u>To Plaintiff:</u>

        Association of Irritated Residents
        Attn: Tom Frantz
        2076 Hays St.
        San Luis Obispo, CA 93405
        Email: tom.frantz49@gmail.com

        San Joaquin Raptor/Wildlife Rescue Center
        Central Valley Safe Environment Network
        Protect Our Water
        Attn: Lydia Miller
        PO BOX 778
        Merced, CA 95341
        Email: sjrrc@sbcglobal.net
                cvsen@sbcglobal.net
                protectourwater@sbcglobal.net

*With a copy to:*

Matthew Maclear & Erica Maharg

Aqua Terra Aeris Law Group LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Email: mcm@atalawgroup.com, eam@atalawgroup.com

To Defendant:

Markus Stahl
17775 Avenue 23 ½
Chowchilla, CA 93610
Email: Markus.H.Stahl@saint-gobain.com

Brett Slensky
Saint-Gobain Corporation
20 Moores Road
Malvern, PA 19355
Email: Brett.E.Slensky@saint-gobain.com;

*With a copy to:*

Mark Elliott
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 3600
Los Angeles, CA 90071
Email: mark.elliott@pillsburylaw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are sent (as indicated by postmark or other applicable information) by first class mail, by certified mail, by express courier service; or the same day of sending notification or communication by email. Any change of address or addresses shall be communicated in the manner described above for giving notices.

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first set forth below.

Date:  Feb. 24, 2022          ASSOCIATION OF IRRITATED RESIDENTS

_____
Tom Frantz
Executive Director

15

Date: _February 24_, 2022      SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER

_Lydia Miller_

Lydia Miller
Executive Director

Date: _February 24_, 2022      CENTRAL VALLEY SAFE ENVIRONMENT

NETWORK

_Lydia Miller_

Lydia Miller
Executive Director

Date: _February 24_, 2022      PROTECT OUR WATER

_Lydia Miller_

Lydia Miller
Executive Director

Date: _Feb 25, 2022_, 2022      CERTAINTEED LLC

_Andrew Goldberg_

Andrew Goldberg
Vice President/General Manager, U.S. Insulation

_Approved as to form:_

Date: _Feb. 24_, 2022      AQUA TERRA AERIS LAW GROUP LLP

_Matthew C. Maclear_

Matthew C. Maclear
Erica A. Maharg
Attorneys for Plaintiffs

16

Date: February 25, 2022          PILLSBURY WINTHROP SHAW PITTMAN LLP


Mark E. Elliott
Michael McDonough
Rebecca Lee
Attorneys for Defendant